FILED
2013 Mar-18  PM 01:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **CONNIE GOLDSBY,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:11-CV-03411-RDP** |
| | } | |
| **MICHAEL ASTRUE,** | } | |
| **COMMISSIONER OF SOCIAL** | } | |
| **SECURITY,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Plaintiff Connie Goldsby brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security disability insurance benefits under Title II of the Act.  After reviewing the record and the briefs submitted by the parties, the court finds that the Commissioner's decision is due to be affirmed.

## I.  Proceedings Below

Plaintiff filed her application for disability insurance benefits ("DIB") on July 31, 2008, alleging disability beginning on September 13, 2004 and extending through her date last insured, September 30, 2007.  (Tr. 69, 121).  After Plaintiff's application was denied, Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ") on December 3, 2009 in Birmingham, Alabama.  (Tr. 24-68, 72, 80).  In her March 9, 2010 decision, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time from September 13, 2004, her alleged onset date of disability, through September 30, 2007, her date last insured.  (Tr. 19).  After the Appeals Council denied Plaintiff's request for review of the ALJ's decision on July 21, 2011 (Tr.

1), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's review.  42 U.S.C. § 405(g).

At the time of the hearing, Plaintiff was 67 years old, weighed 212 pounds, and had earned a college degree.  (Tr. 31, 32 , 69).  Plaintiff had previously worked as a political organizer, administrative assistant, chief lobbyist, and as executive directory and part-time recruiter for the Alabama Education Association.  (Tr. 33-34, 146).  Plaintiff alleges disability from September 13, 2004 due to Guillain-Barre syndrome and neuropathy.  (Tr. 125).  Medical records show that Plaintiff suffered from fibrosis, chronic thrombosis of her left leg lesser saphenous vein from at least December 11, 2003, obesity from at least September 2004, borderline hypertension, as well as biliary dyskinesia and an incisional hernia, for which she underwent surgery in September 2004.  (Tr. 321, 326, 464).  Due to complications related to the hernia and mesh inserted in an attempt to repair the hernia, Plaintiff required surgeries in November 2004, September 2005, and November 2005.  (Tr. 283, 285, 299).  Plaintiff also underwent a colonoscopy on May 30, 2007, which revealed no polyps. (Tr. 280-81).

An additional surgery in November 2007, after Plaintiff's date last insured, revealed a large ventral defect and the mesh previously used to repair Plaintiff's hernia had "ripped off."  (Tr. 276).  On December 23, 2007, Plaintiff was admitted to the hospital after exhibiting acute weakness of the lower extremities and numbness with decreased sensation in both her arms and legs, indicating possible Guillain-Barre syndrome, peripheral neuropathy, transverse myelitis, or conversion. (Tr. 221-22, 224-25).  Nerve conduction tests revealed demyelinating polyneuropathy, confirming the diagnosis of Guillain-Barre.  (Tr. 351).

On January 3, 2008, Plaintiff was transferred to Lakeshore Rehabilitation Hospital, under the care of Dr. Emily Riser, in an effort to restore her mobility and self-care.  (Tr. 315).  Plaintiff was then discharged to a skilled nursing facility on January 24, 2008, before returning to Lakeshore on April 1, 2008 for additional therapy.  (Tr. 352, 447).  Upon discharge on May 24, 2008, Plaintiff was medically stable, but still required minimum assistance or supervision in eating, grooming, dressing, and bathing, and could walk only a short distance using a platform rolling walker.  (Tr. 447).  A follow-up examination in July 2008 by Dr. Riser revealed decreased sensation, weakness in both hands, and continued need for a rolling walker.  (Tr. 456).  Also in July 2008, Plaintiff underwent an examination and duplex ultrasound on her legs because of swelling, revealing mild edema and significant tenderness, but no vein thrombosis or vein abnormalities.  (Tr. 459-60).

In a letter dated December 18, 2008, Dr. Barry McLean of the High Blood Pressure Center in Birmingham, Alabama commented upon Plaintiff's neurological conditions, stating that Plaintiff was a "long time patient [of his]"[1] and expressed the opinion that Plaintiff was "totally and permanently disabled with Guillain-Barre Syndrome, tremors, left foot drop, and bilateral paralysis of her hands."  (Tr. 473).  Similarly, on January 6, 2009, Dr. Emily Riser stated in her notes following an examination of Plaintiff that "[t]here is no way that [Plaintiff] can be gainfully employed . . . ."  (Tr. 479).  In a January 12, 2009 letter, Dr. Riser also expressed the opinion that Plaintiff was "100% disabled" due to Guillain-Barre syndrome.  (Tr. 483).

---

[1] Although Dr. McLean claimed a long-standing medical relationship with Plaintiff in his letter, the record contains no other medical records indicating if or when Dr. McLean actually treated Plaintiff.

## II.  ALJ Decision

Determination of disability under the Act requires a five-step analysis.  *See* 20 C.F.R. § 404.1, *et. seq*.  First, the ALJ determines whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(b).  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the claimant engages in gainful work activity, then the claimant cannot claim disability.  Second, the ALJ determines whether the claimant has a  medically determinable impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities.  Absent such impairment, the claimant may not claim disability.  Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).  If such criteria are met, the claimant is declared disabled.

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  If the claimant is determined to be capable of performing past relevant work, then she is deemed not disabled.  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.

In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience.  20

4

C.F.R. § 404.1520(g).  Here the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1512(g), 404.1560(c).

In this case, the ALJ determined that Plaintiff: (1) did not engage in substantial gainful activity during the time of her alleged disability; (2) does have medically determinable impairments that more than minimally affect her ability to perform work-related activities; but (3) did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (Tr. 14, 15).

After considering all of the medical evidence, the ALJ found that during the alleged period of disability, Plaintiff retained the RFC to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a).  (Tr. 15).  The ALJ determined that, through the date last insured, Plaintiff could perform her past relevant work as a chief lobbyist and social programs administrator.  (Tr. 18). The ALJ therefore concluded that Plaintiff was not disabled as defined by the Act, and thus was not entitled to a period of disability benefits.

Plaintiff challenges the ALJ's determination of (1) her RFC, and (2) that she retained the ability to perform her past relevant work during the period from her alleged onset date of disability to her date last insured.

### III. Plaintiff's Argument for Remand or Reversal

Plaintiff argues that this court should vacate and reverse the ALJ's decision because of legal error, or in the alternative, remand this case in accordance sentence four of 42 U.S.C. § 405(g).  (*See* Pl.'s Mem. 11).  First, Plaintiff argues that the ALJ erred by not consulting a medical advisor pursuant to SSR 83-20.  (Pl.'s Mem. 7). Specifically, Plaintiff contends that if there was doubt as to

whether her impairments could be construed as progressive in nature, the ALJ was required to consult a medical expert to infer an accurate onset date of disability. (Pl.'s Mem. 8). Second, Plaintiff argues that the ALJ erred in her RFC determination by failing to consider Plaintiff's obesity. (Pl.'s Mem. 9).

## IV.  Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence or whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  The Commissioner's factual findings are conclusive when supported by substantial evidence.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Martin*, 894 F.2d at 1529. Legal standards are reviewed *de novo*.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

The issues before this court are whether the ALJ erred in failing to consult a medical advisor per SSR 83-20 in determining Plaintiff's onset date of disability, and whether the ALJ failed to properly consider Plaintiff's obesity in rendering her decision.

## V.  Discussion

For the reasons discussed below, and after careful review, the court concludes that the ALJ's decision is supported by substantial evidence and that the ALJ applied correct legal standards.  The decision is therefore due to be affirmed.

**A.      The ALJ Did Not Err by Failing to Utilize the Services of a Medical Advisor.**

Plaintiff asserts that the ALJ committed reversible error by failing to consult a medical expert to establish the onset date of disability.  Plaintiff argues that the ALJ was required by SSR 83-20 to consult a medical expert because the record evidence shows it was necessary to infer the onset date of Plaintiff's disability.  (Pl.'s Mem. 8).  Plaintiff argues that such an inference was necessary because "it would appear far more likely that [she] was indeed progressively symptomatic with the conditions diagnosed in November 2007"[2] rather than the impairments rendering her suddenly unable to work. (Pl.'s  Mem. 8).  Because the impairments diagnosed after her date last insured could have been "progressively symptomatic" during her insured period, Plaintiff argues the ALJ should have had doubt about her onset date of disability.  Therefore, an inference of onset was necessary, and the ALJ should have consulted a medical expert pursuant to SSR 83-20.  (Pl's Mem. 8-9).

This argument misses the mark for two reasons.  First, Plaintiff misstates the requirements of SSR 83-20, which, correctly understood, require no inference of onset in this case.  Second, even under Plaintiff's own theory of SSR 83-20, the ALJ clearly did not err in declining to call a medical advisor to determine Plaintiff's onset date.

---

[2] As the record indicates no new diagnoses in November 2007, the court understands Plaintiff to refer to her development of Guillain-Barre syndrome in December 2007.

There is no published Eleventh Circuit case law definitively establishing that SSR 83-20 can require an inference of onset where, as here, the ALJ has not otherwise found a claimant disabled. The case law from other Circuits on this issue is sparse, and cases addressing the issue tend to omit extensive reasoning supporting their positions. *Compare Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997) (holding that SSR 83-20 is categorically inapplicable where an ALJ has not otherwise made a finding of disability) *and Scheck v. Barnhart*, 357 F.3d 697, 701 (7th Cir. 2004) (same) *with Grebenick v. Chater*, 121 F.3d 1193, 1200 (8th Cir. 1997) (reasoning that, under certain circumstances, SSR 83-20 can require an ALJ to call a medical advisor to infer the onset date of disability where the ALJ has not otherwise found a claimant disabled). However, this issue need not be decided here. The requirement of SSR 83-20 that an ALJ consult a medical advisor in inferring onset is inapplicable here because, under the terms of SSR 83-20 itself and based upon this record, it was unnecessary for the ALJ to infer an onset date.

A close examination of the text of SSR 83-20 reveals that its requirement that an ALJ consult a medical advisor before inferring the timing of onset is inapplicable to this case. SSR 83-20 does note the importance of determining the proper onset of disability, but only requires an ALJ to consult a medical advisor to assist in the onset determination "when onset must be inferred." SSR 83-20, 1983 WL 31249, at *3 (Aug. 20, 1980). However, onset need only be inferred in a certain set of cases. Specifically, SSR 83-20 notes the need for inference in cases involving "slowly progressive impairments, [where] it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling." *Id.* at *2. Thus, Plaintiff's argument that an inference of onset was necessary because the ALJ could have doubt about the onset period is contrary to the text of SSR 83-20 itself.

Under the actual requirements of SSR 83-20, the ALJ was not required to consult a medical expert in this case. The record makes clear that the ALJ relied on medical evidence dating from before and during the alleged period of disability, and therefore did not face a situation where it was "impossible to obtain medical evidence establishing the precise date an impairment became disabling." *Id.* Plaintiff alleged an onset date of September 13, 2004 with a date last insured of September 30, 2007. (Pl.'s Mem. 1-2). In her written opinion, the ALJ explicitly considered and rejected this argument, relying upon medical records from throughout this alleged disability period, even discussing medical records from October 2003, nearly a year before Plaintiff's alleged onset date. (Tr. 15, 16, 18).

But Plaintiff's argument also fails on its own terms. Based on her examination of these records, the ALJ made clear that she had no doubt that Plaintiff was not progressively symptomatic during the alleged period of disability; thus, even under Plaintiff's erroneous statement of the law, no inference of onset was necessary. Plaintiff has alleged disability arising from two neurological impairments: Guillain-Barre syndrome and neuropathy. (Tr. 125). Yet, as the ALJ pointed out in her opinion, and as the medical records also indicate (Tr. 220-22), Plaintiff "had no symptoms or treatment from these impairments until December 2007," nearly three months after her date last insured. (Tr. 18). In reaching this determination, the ALJ relied on medical records from Plaintiff's hospital stays throughout the alleged period of disability, none of which indicated any abnormal neurological functioning during this time. (Tr. 18).

The ALJ relied on adequate medical records dating from the relevant time period, none of which raised any doubt as to whether Plaintiff's neurological impairments may have arisen prior to her date last insured. Therefore, under the requirements of SSR 83-20 (and even based upon

Plaintiff's erroneous interpretation of this regulation), the ALJ did not need to infer onset under SSR 83-20.  Thus, the ALJ did not err in failing to call a medical advisor to assist in Plaintiff's onset determination.

**B.    The ALJ Properly Considered Plaintiff's Obesity.**

Plaintiff alleges that the ALJ "failed to consider [her] obesity" in making her RFC determination.  This contention finds no support in the record. The ALJ specifically noted in her opinion that she "considered the impact of [Plaintiff]'s obesity in exacerbating her problems and functional limitations caused by her other impairments." (Tr. 16).  The ALJ further indicated, that although she considered the effects of obesity in making her decision, "the composite available medical evidence of record does not indicate that [obesity] has otherwise reduced [Plaintiff's] functional limitations and restrictions." (Tr. 17).  Thus, the assertion that the ALJ did not consider Plaintiff's obesity is false.

Plaintiff also alleges that even if the ALJ did consider her obesity, the ALJ "failed to clarify what limitations and restrictions" she considered exacerbated by Plaintiff's obesity, since no such limitations or restrictions were mentioned in the ALJ's RFC determination. (Pl.'s Mem. 10).  Again, this contention is false because the ALJ clearly identified such limitations or restrictions.  (*See* Tr. 16).  The ALJ specifically considered Plaintiff's testimony that her "multiple hernia surgeries eventually began affecting her hands and caused weakness in her stomach along with difficulty lifting, sitting, and standing." (Tr. 16).  This statement plainly identifies the restrictions and limitations that the ALJ considered in conjunction with Plaintiff's obesity.  Thus, both of Plaintiff's contentions regarding the ALJ's alleged failure to consider her obesity are without merit.

## VI.  Conclusion

The court concludes that the ALJ's determinations are supported by substantial evidence and that proper legal standards were applied in reaching her determinations.  The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this _____18th_____ day of March, 2013.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE